

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00059-CR

KEVIN DEAN DUNN                                                     APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
### TRIAL COURT NO. 1298839

----------

## OPINION

----------

## I. INTRODUCTION

Appellant Kevin Dean Dunn appeals his conviction for driving while intoxicated with a blood alcohol concentration of .15 or higher, a class-A misdemeanor. *See* Tex. Penal Code Ann. 49.04(a), (d) (West Supp. 2014). Dunn pleaded not guilty, but a jury found him guilty; the trial court assessed Dunn's punishment at ninety days' confinement and a $1,250.00 fine. The trial

court suspended imposition of Dunn's sentence and placed him on community supervision for a twenty-four month term. In his first two issues, Dunn argues that the trial court erred by denying his motion to suppress because (1) the arresting officer lacked reasonable suspicion or probable cause to stop his vehicle and (2) the search warrant affidavit made by the officer in order to seize a sample of Dunn's blood contained false statements or statements made with a reckless disregard for their truth. In his third issue, Dunn asserts that error exists in the court's charge because it contained an improper instruction stating that a traffic stop is valid when it is premised on reasonable suspicion that the person committed a traffic offense. We will affirm.

## II. BACKGROUND

One evening in August at around 11:00 p.m., while City of Grapevine Police Officer Daniel McClain was on patrol, Dunn pulled up next to Officer McClain's patrol car at a red light. Officer McClain's dash-cam video recorded the evening's events and shows that when the light turned green, Dunn accelerated ahead of Officer McClain. As Dunn drove, he drifted into Officer McClain's lane, requiring Officer McClain to slow down to avoid a collision. Dunn corrected his vehicle, and Officer McClain changed lanes, so that his patrol car was following directly behind Dunn's vehicle. When Dunn's vehicle drifted the other direction and topped the broken white line, prompting a driver in the adjacent lane to brake, Officer McClain stopped Dunn for failing to maintain a

2

single lane of travel. It was late at night, and Officer McClain thought Dunn could be driving while intoxicated.

In an affidavit for a search warrant to obtain a sample of Dunn's blood, Officer McClain stated that when he began talking with Dunn, he smelled a "strong odor of an alcoholic beverage" and observed that Dunn had bloodshot, watery eyes and spoke "with a thick tongue." At Officer McClain's request, Dunn got out of his vehicle. Officer McClain noted that Dunn swayed as he stood and that Dunn walked unsteadily. Dunn refused to perform field sobriety tests; Officer McClain arrested him for driving while intoxicated.

Dunn refused to consent to a blood draw; Officer McClain prepared an affidavit for a search warrant to obtain a specimen of Dunn's blood and obtained a warrant. Dunn's blood alcohol content exceeded .15.

Dunn filed two separate motions to suppress: one challenging the grounds for the stop and arrest, the other contending that Officer McClain's statements in his affidavit were false or made with a reckless disregard for the truth. The trial court conducted successive, back-to-back hearings on Dunn's two motions to suppress and denied them.[1]

---

[1]The trial court issued findings of fact concerning Dunn's second motion to suppress and we previously abated this appeal at Dunn's request to permit the trial court to make findings of fact concerning Dunn's first motion to suppress. The trial court supplemented its findings and conclusions with findings regarding the first motion to suppress, stating that Officer McClain was a credible and reliable witness at the suppression hearing and that he possessed reasonable suspicion to stop Dunn's vehicle. Dunn then filed a motion requesting that this court disregard the trial court's supplemental findings of fact and conclusions of

3

### III. THE CONSTITUTIONAL PREREQUISITE TO A TRAFFIC STOP

Dunn's first and third issues are premised on the contention that the United States Supreme Court in *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996), "without announcing that a substantive change had occurred, mysteriously raised" the prerequisite for a stop based on a traffic violation from reasonable suspicion to probable cause. Consequently, in his first issue, Dunn argues that the trial court erroneously denied his first suppression motion because Officer McClain did not have probable cause for the stop. Dunn's third issue claims that the jury charge incorrectly instructed that reasonable suspicion of a traffic offense justifies a stop when, according to Dunn's interpretation of *Whren*, probable cause is required for such a stop.

### A. Law Governing Traffic Stops

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *see Young v.*

---

law. Dunn complains of the trial court's supplemental conclusion that Officer McClain possessed reasonable suspicion to stop him. Because we review this conclusion and the facts upon which it is based in connection with Dunn's first two issues, and because Dunn requested the supplemental findings of fact and conclusions of law, we deny his motion that we disregard them.

*State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009).  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.  *Amador*, 221 S.W.3d at 672.  Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.  *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.  *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).  An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law.  *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492.  Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.  *Ford*, 158 S.W.3d at 492.  This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.  *Id.*

Dunn's argument that *Whren* raised the prerequisite for a traffic stop to probable cause is the same argument that was advanced by the defendant in *United States v. Lopez-Soto,* and we agree with the Ninth Circuit's response:

> Lopez-Soto argues that the Supreme Court's decision in *Whren* . . . stands for the proposition that an officer must have probable cause to make a traffic stop. He relies on the Court's observation that, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."
>
> Prior to *Whren*, it was settled law that reasonable suspicion is enough to support an investigative traffic stop.
>
> . . . .
>
> We do not believe that the Court in *Whren* intended to change this settled rule. The passage on which Lopez-Soto relies tells us only that probable cause is sufficient to support a traffic stop, not that it is necessary. If the Supreme Court announced in *Whren* a new rule of law, as Lopez-Soto contends, we would expect it to have acknowledged the change and explained its reasoning. Such an explanation is notably absent from the *Whren* opinion. Instead, the facts of *Whren* involved speeding and failure to signal, and the parties agreed that, from these facts, the police had probable cause to make the disputed stop. This threshold agreement allowed the *Whren* Court to address a different issue, namely the constitutional relevance of the officers' subjective intent in making the stop, to which the Court gave sustained attention. Given that probable cause was clearly satisfied on the facts before the Court in *Whren* and that the Court directed its focus elsewhere, we do not believe that the casual use of the phrase "probable cause" was intended to set a new standard.
>
> . . . [T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops.

205 F.3d 1101, 1104–05 (9th Cir. 2000) (citations omitted).

The Ninth Circuit's treatment of the argument accords with Texas law. *See Ford*, 158 S.W.3d at 492 ("An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law."); *see also, e.g.*, *Delafuente v. State*, 414 S.W.3d 173, 179 (Tex. Crim. App. 2013) ("Taken together, these facts and inferences are sufficient to lead a reasonable officer to conclude that appellant was engaged in criminal activity, namely a violation of [Texas Transportation Code] Section 545.363(a)."); *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) ("In this case, the State was required to show that the officer had reasonable suspicion that Appellant committed the traffic violation of driving in the left lane without passing when a sign (a traffic control device) prohibited such action.").

Because reasonable suspicion is the threshold for a traffic stop, the trial court's jury charge was not erroneous, and we overrule Dunn's third issue. *See Sanchez v. State,* 418 S.W.3d 302, 308 (Tex. App.—Fort Worth 2013, pet. ref'd) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)) ("[I]f [jury-charge] error did not occur, our analysis ends."). We now turn to whether the facts support the trial court's finding that Officer McClain had reasonable suspicion to stop Dunn for failing to maintain a single lane of travel.

**B. Motion to Suppress**

We review a trial court's ruling on the motion to suppress evidence under a bifurcated standard of review. *Amador*, 221 S.W.3d at 673; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision,

7

we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede*, 214 S.W.3d at 24–25; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, as here, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19.

8

We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

The Transportation Code provides, "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code Ann. § 545.060(a)(1)(2) (West 2011). Officer McClain saw Dunn drift from his lane twice, which can be seen on the video. And contrary to Dunn's assertion on appeal, the drifting was unsafe; Officer McClain as well as another driver had to slow down to avoid hitting Dunn.[2] Viewing the video and Officer McClain's testimony in the light most

---

[2]Dunn asserts that Officer McClain's self-described "evasive maneuver" involved only taking his foot off the accelerator and did not involve braking or making a quick movement. Regardless, deceleration, whether by braking or discontinuing acceleration, in response to a weaving driver, is evasive, and unsafe weaving does not require that other drivers brake or make quick, furtive movements. *See Taylor v. Sate*, 916 S.W.2d 680, 681–82 (Tex. App.—Waco 1996, pet. ref'd) (considering swerving into another lane and almost hitting an officers' vehicle therein to be unsafe driving); *see also Yeakley v. State*, No. 03-09-00584-CR, 2011 WL 677391, at *4 (Tex. App.—Austin Feb. 25, 2011, pet. dism'd) (holding that surrounding drivers' use of caution to avoid the appellant's weaving vehicle did not render the weaving safe).

favorable to the trial court's ruling, *see Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818–19, *Montanez*, 195 S.W.3d at 109, we conclude that the record supports the trial court's ruling. We overrule Dunn's first issue.

## IV. VERACITY OF AFFIDAVIT STATEMENTS

Dunn's second issue is premised on *Franks v. Delaware*, in which the United States Supreme Court held,

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the alleged false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. 154, 155–56, 98 S. Ct. 2674, 2675 (1978).

In conducting a *Franks* suppression review, we use the same bifurcated review outlined in the previous section, giving almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while reviewing de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Davis v. State*, 144 S.W.3d 192, 201 (Tex. App.—Fort Worth 2004, pet. ref'd) (op. on reh'g). An affidavit supporting a search warrant begins with the presumption of validity. *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684; *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003). It is the defendant's burden to rebut that presumption by proving by a preponderance of the evidence that the affiant made false statement deliberately or with a reckless disregard for the

10

truth. *Franks*, 438 U.S. at 156, 171, 98 S. Ct. at 2676, 2684; *Davis*, 144 S.W.3d at 201. The defendant must also show that absent the false information, the remaining content is insufficient for probable cause. *Franks*, 438 U.S. at 156, 171–72, 98 S. Ct. at 2676, 2684–85; *Davis*, 144 S.W.3d at 201; *see Cates*, 120 S.W.3d at 356.

In its findings of fact and conclusions of law, the trial court stated that the affidavit statements were all borne out by the testimony at the suppression hearing and that there was no proof that Officer McClain deliberately made false statements or made statements with a reckless disregard for the truth. Dunn disagrees, challenging several of the affidavit statements and noted observations, including the statement that Dunn drifted into Officer McClain's lane and almost collided with his patrol vehicle, that appellant had a strong odor of alcohol, that Dunn "spoke with a thick tongue[,]" that Dunn's clothing was disorderly, that Dunn swayed and staggered, and that Dunn had an uncooperative attitude. Having already determined that the video supports Officer McClain's description of Dunn drifting into his lane in an unsafe manner, this statement in the affidavit is not false. *See Franks*, 438 U.S. at 156, 171–72, 98 S. Ct. at 2676, 2684–85 (instructing that information that is proven to be false and to have been made intentionally, knowingly, or with a reckless disregard for the truth is to be omitted and the rest of the affidavit reviewed for probable cause); *Davis*, 144 S.W.3d at 201 (same); *see Cates*, 120 S.W.3d at 356 (same).

11

Officer McClain's observations in his affidavit that Dunn's eyes were bloodshot, red, and watery were not challenged before the trial court or on appeal.

The only evidence that Dunn claims establishes the falsity of Officer McClain's affidavit and testimony is the video of the stop. We note, however, that the video sheds no light on Officer McClain's assertion that Dunn smelled strongly of alcohol. Moreover, although slight swaying is arguably visible on the video, in general the subtleties of swaying, slight staggering, and even speaking "thick-tongued" are not always amenable to being captured by a video camera installed in an officer's patrol vehicle parked several feet away, especially when the stop occurs when it is dark outside as in this case, or by the audio equipment worn by the officer. *See Tucker v. State*, 369 S.W.3d 179, 187 n.1 (Tex. Crim. App. 2012) (Womack, J., concurring) (noting that the evidentiary value of video evidence often depends on other factors because "[t]he clarity of the video is often dependent on the lighting, angle or focus of the camera, or the camera's distance from the object recorded" and "[t]he audio may be inaudible due to the tone of the speaker, static, or other background noise"). Viewing the video in the light most favorable to the trial court's ruling, it supports the court's implicit finding that the officer's affidavit statements were accurate. *See id.* at 185 ("The court of appeals should view the video in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings that support the denial of Appellant's motion to suppress."); *Montanez*, 195 S.W.3d at 109.

Even assuming that the video evidence did not corroborate Officer McClain's affidavit and testimony as implicitly found by the trial court, it did not disprove his affidavit or testimony or expose a deliberate falsehood or reckless disregard for the truth. Dunn's belief that the video did not support Officer McClain's affidavit statements—which Dunn characterizes on appeal as Officer McClain's "purely subjective" opinions—is the type of suspicion better channeled into a robust cross-examination rather than serving as a foundation for a *Franks* hearing. *See Franks*, 438 U.S. at 171, 98 S. Ct. at 2684 ("[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."). In short, without more evidence, Dunn failed to rebut the affidavit's presumption of validity with a preponderance of the evidence showing Officer McClain made false statements deliberately or with a reckless disregard for the truth. *Franks*, 438 U.S. at 156, 171, 98 S. Ct. at 2676, 2684; *Cates*, 120 S.W.3d at 355; *Davis*, 144 S.W.3d at 201. And we must respect the trial court's finding that Officer McClain was credible at the hearing, *see Davis*, 144 S.W.3d at 201, and implicit finding that the video supported Officer McClain's affidavit statements, *see Tucker*, 369 S.W.3d at 185. Accordingly, we overrule Dunn's second issue.

## V. CONCLUSION

Having overruled Dunn's three issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

PUBLISH

DELIVERED: May 21, 2015